IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| GeoVera SPECIALTY INSURANCE COMPANY | * * * * | |
| Plaintiff | * * | NO: 4:08CV00163 SWW |
| VS. | * * * | |
| GRAHAM ROGERS, ET AL. | * * * | |
| Defendants | * | |

## ORDER

Plaintiff GeoVera Specialty Insurance Company ("GeoVera") commenced this action pursuant to the Court's diversity jurisdiction against Graham Rogers, Inc. ("Graham Rogers"), East Central Arkansas Insurance, Inc. ("ECA"), and Jerry Reeves ("Reeves"). Pursuant to the Eighth Circuit's mandate entered May 24, 2011, the case is before the Court for resolution of GeoVera's breach of contract claim against Graham Rogers. Also remaining for resolution are Graham Rogers' cross-claims against ECA and Reeves and third-party complaint against GeoVera Specialty Insurance Services, Inc. ("GeoVera Services").

Now before the Court are (1) Graham Rogers' motion for summary judgment (docket entries #165, #166, #167), GeoVera and GeoVera Services' response in opposition (docket entry #175, #176, #177), and Graham Rogers' reply (docket entry #178) and (2) GeoVera's motion for summary judgment (docket entries #168 #169, #170), Graham Rogers' response (docket entries

1

#171, #172, #173), and GeoVera's reply (docket entry #174).  After careful consideration, and for reasons that follow, Graham Rogers' motion for summary judgment is denied, and GeoVera's motion for summary judgment is granted.

**I.  Background**

GeoVera, formerly known as USF&G Specialty Insurance Company, and Graham Rogers, a wholesale insurance broker, entered a Surplus Lines Broker Agreement ("Agreement"), effective June 1, 2003.[1]  Article I of the Agreement authorized Graham Rogers to "market, present proposals of residential property insurance to [GeoVera] for its acceptance, and issue and deliver residential property insurance policies, subject to the terms of [the Agreement]." Docket entry #57, Ex. A.   Under Article II, Graham Rogers promised  "[t]o apply written underwriting and rating guidelines prepared by [GeoVera] which have been provided to [Graham Rogers], and as may be revised by [GeoVera] from time to time, and to deliver policies, provided the risk falls within the acceptable underwriting criteria " *Id*.

Article II also obligates Graham Rogers to appoint retail agents to market GeoVera insurance policies.  The Agreement gave  Graham Rogers and retail agents appointed by Graham Rogers access to GeoVera's Residential Homeowner Quoting and Homeowner Insurance Processing System ("the System") "for purposes of sending quote requests, receiving quotes, and printing and delivering quotes, applications, and binders." *Id*.  The Agreement stated that

---

[1] When insurance coverage cannot be procured from licensed Arkansas insurers, "surplus lines" insurance may be purchased from foreign insurers, provided that the transaction proceeds through a licensed surplus lines broker.  *See* Ark. Code Ann. § 23-65-305.   As explained by Jerry Lesch, Graham Rogers' vice president and CEO, Graham Rogers connects retail producers, seeking coverage for hard-to-place risks,  with surplus line insurers, seeking a market for specialty insurance products.   *See* docket entry #57, Ex. C, at 1-14.

Graham Rogers "and/or" retail agents would complete an electronic policy application and that the System would then provide a quote response to Graham Rogers and the retail agent and that Graham Rogers would receive "daily pre-formatted reports from the system." *Id*.

The same day the parties entered the Agreement, Graham Rogers entered a service agreement with GeoVera Services, formerly known as F&G Specialty Insurance Services, Inc. *See* docket entry #57, Ex. F.  GeoVera Services is the service center for GeoVera, and both entities are subsidiaries of Geovera Holdings, Inc. *See* docket entry #167, ¶ 4 and docket entry #176, ¶ 4.  The service agreement provided that GeoVera Services would, among other things, "issue and mail all policies, binders, endorsements, renewals, notices of cancellation or nonrenewal, and any other policy holder notices" and "respond to all questions from retail producers concerning policy issuance, premium and underwriting guidelines[.]"  Docket entry #57, Ex. F.

In 2003, Graham Rogers entered into a retail producer agreement with Jerry Reeves ("Reeves") of East Central Arkansas Insurance ("ECA").  In 2004, Gary and Sherry Balentine applied to GeoVera for homeowners' insurance.  Reeves submitted the Balentines' policy through the System, and GeoVera accepted the application and issued the policy.   However, in early 2006, GeoVera cancelled the Balentines' policy for failure to make a premium payment. Reeves contacted GeoVera Services on behalf of the Balentines, and requested that the policy be reinstated.  *See* Reeves Dep. at 13-14.   Reeves testified that in response to his request, in January 2006, a person named "Thea" called his office and informed him that GeoVera would "rewrite" the policy.  According to Reeves, Thea instructed him to rewrite the Balentines'

application "as it was."[2]

In February 2006, Reeves copied the Balentines' original insurance application and submitted it to GeoVera via the System. Reeves acknowledges that he did not communicate with the Balentines to confirm the accuracy of information contained on the application, nor did he obtain the Balentines' signatures on the application before or soon after he submitted it to GeoVera. *See* Reeves Dep. at 18-19.

In September 2006, fire destroyed the Balentines' home, and they filed an insurance claim under their GeoVera homeowners' policy. During GeoVera's claim investigation, it discovered that the Balentines would not have qualified for coverage under the company's underwriting guidelines if the application had contained accurate information. GeoVera's

---

[2]Pertinent portions of Reeves's deposition transcript reads as follows:

Q: [by counsel for Graham Rogers] Okay. So in the latter part of January 2006 a person named Thea in a phone call to your office says . . . that USF&G is not going to renew this policy.
A: They won't - - they wanted - - no, not that they wouldn't renew it. They would rewrite it.
Q: What does that mean?
A: They wouldn't accept that - - the check that they had.
Q: Okay.
A: Because it was six days late.
Q: All right. So what had to happen? What were they saying?
A: I was told to simply rewrite it as it was. And that's - - that's the wording that I got. Go ahead and rewrite it as it was.

Reeves Dep. at 15-16.

Q: [by counsel for Graham Rogers] So in this particular situation, the Balentine case, I understood that you were told to rewrite the application as it was.
A: Yes, sir.

Reeves Dep. at 37.

written underwriting guidelines, which were in place during the relevant time period, provided that insurance applications would be completed on-line and printed in the agent's office for the applicants' signatures. *See* docket entry #59, Exhibit Filed Under Seal. It is undisputed that the Balentines did not sign the application. GeoVera's guidelines also provided that "the risk must fit" criteria including that the home to be insured be located on no more than five acres and that there had been no foreclosures, repossessions, or bankruptcies within the past five years. *See id*. It is undisputed that the Balentines' February 2006 insurance application declared that the subject residence was located on less than five acres, but it was actually located on six acres. The application also stated that the Balentines had not filed for bankruptcy within the past five years, but they had filed a bankruptcy petition in 2005.

After determining that the application's deficiencies could not be attributed to the Balentines, GeoVera paid them $785,708.34 for damages covered under the policy. Then, on February 22, 2008, GeoVera commenced this action, asserting, among other things, claims for negligence and breach of contract against Graham Rogers. In support of its contract claim, GeoVera charges that Graham Rogers "breached its contractual obligations, duties and responsibilities under the . . . Agreement . . . directly and through its agents' negligent conduct in failing to reasonably and adequately apply the written underwriting and rating guidelines prepared by [GeoVera]." Docket entry #65, ¶ 29. GeoVera maintains that it would not have reissued the Balentines' policy in February 2006 if the application submitted by Reeves had contained accurate information.

By order entered August 7, 2009, the Court entered summary judgment in Graham Rogers' favor, finding that Graham Rogers had no role or duty with respect to submitting the

Balentines' application. On appeal, the Eighth Circuit affirmed the grant of summary judgment on GeoVera's negligence claim but reversed on the breach of contract claim, finding "that the Agreement places a duty on Graham [Rogers] to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those submitted by retailers appointed by Graham. *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 449 (8th Cir. 2011). The Court of Appeals concluded that "while retailers may help or assist Graham [Rogers] in applying the underwriting guidelines, Graham [Rogers] retained the ultimate duty to apply GeoVera's underwriting guidelines so that the risk to be insured fell within the acceptable underwriting guidelines.'" *Id*. at 449-450.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is,

a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

### III.  Discussion

**A.**   **Graham's Motion for Summary Judgment**

Graham Rogers moves for summary judgment on three grounds: (1) GeoVera's contract claim is barred because it entered a settlement agreement with Reeves and ECA; (2) GeoVera waived any right it may have against Graham Rogers; and (3)  Graham Rogers' obligations to GeoVera were assumed by GeoVera Services.

*GeoVera's Settlement with Reeves and ECA*.  In addition to Graham Rogers, GeoVera named Reeves and ECA as defendants in this case, charging both with negligence, breach of fiduciary duty, and constructive fraud.  After this Court granted summary judgment in Graham Rogers' favor,  GeoVera  reached a settlement with Reeves and ECA.   GeoVera reports that it settled its claims against Reeves and ECA for $20,000, which it contends represents only a small percentage of its loss.

According to Graham Rogers, by settling with Reeves and ECA, GeoVera "affirmatively elected its remedy in tort" and "no longer has a contract cause of action because it chose to recover on its tort claims for the same alleged damages."  Docket entry #166, at 5.  The Court disagrees.  The election-of-remedies doctrine applies to remedies, not causes of action, and it prevents a person from pursuing two inconsistent remedies.  *Regions Bank v. Griffin,* 364 Ark. 193, 196, 217 S.W.3d 829, 832 (2005).  Here, GeoVera seeks money damages and it may pursue multiple claims against multiple parties until full satisfaction is had.  *See Gibson v. Gibson,* 266 Ark. 622, 627, 589 S.W.2d 1, 3 (1979).  Graham Rogers contends that GeoVera has obtained full

satisfaction by settling with ECA and Reeves and argues that "the actual numbers are of no consequence because the satisfaction of the tort claim put an end to the contract remedy." However, a satisfaction is an acceptance of full compensation for an injury, and it is far from clear that a $20,000 settlement provided GeoVera full compensation for its alleged injury. In sum, the Court finds that Graham Rogers is not entitled to summary judgment based on GeoVera's release of claims against Reeves and ECA.

*Waiver.* Graham Rogers asserts that Reeves's testimony establishes that GeoVera waived any right it "might otherwise have had against Graham Rogers in connection with the submission of the application and compliance with the underwriting guidelines." Docket entry #166, at 8.

Waiver "may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon that right. The relinquishment of the right must be intentional." *Bharodia v. Pledger,* 340 Ark. 547, 555, 11 S.W.3d 540, 545 (2000)(citing *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999)). Reeves's vague testimony regarding a phone call he received from a person named Thea, who apparently worked for GeoVera Services, fails to establish that GeoVera knew that the Balentines' second application contained false information and waived its right to have Graham Rogers apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by retail agents. The record is void of evidence that GeoVera knowingly waived its rights under the Agreement.

*Assumption of Responsibility*. Graham Rogers asserts that to the extent Reeves submitted a non-conforming application, it was done under the supervision and at the direction

of Geovera Services. According to Graham Rogers, it is entitled to judgment as a matter of law that Geovera Services assumed Graham Rogers' obligation to apply GeoVera's underwriting guidelines to all applications submitted under the terms of the Agreement.[3]

Graham Rogers presents no evidence that GeoVera intended or agreed that GeoVera Services would assume Graham Rogers' obligations under the Agreement. Accordingly, Graham Rogers' service agreement with GeoVera Services did not relieve Graham Rogers of its contractual obligation to GeoVera. *See* Restatement (Second) of Contracts § 318 (1981)("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor."); *see also GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*., 636 F.3d 445, 449-450 (8th Cir. 2011)("Graham retained the ultimate duty to apply GeoVera's underwriting guidelines so that the risk to be insured fell 'within the acceptable underwriting criteria.'"). Furthermore, the Court finds that Graham Rogers has failed to present evidence that would permit a reasonable juror to conclude that GeoVera Services or GeoVera instructed Reeves to submit an application that contained false information.

**B.     GeoVera's Motion for Summary Judgment**

In order to establish a claim for breach of contract, GeoVera must establish that a valid contract existed, that Graham Rogers breached the contract, and that GeoVera suffered damages

---

[3]Graham Rogers filed a third-party complaint against GeoVera Specialty in this case, alleging as follows: "To the extent the insurance policy to the Balentines was issued in error, it was issued by [GeoVera Services], who was in possession of the same or greater information than was available to [Graham Rogers] and, therefore, is the party that would be liable for any damages caused if the issuance of the policy was inappropriate." Docket entry #36, ¶ 9.

as a result of that breach. *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985)(citing *Allied Chem. Corp. v. Van Buren Sch. Dist.*, 264 Ark. 810, 575 S.W.2d 445 (1979)). Here, neither party disputes the validity of the Agreement, and it is the law of this case that the Agreement obligated Graham Rogers to "apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by the retailers appointed by Graham." *GeoVera*, 636 F.3d at 450. The Eighth Circuit noted Graham could have fulfilled its obligation to apply GeoVera's underwriting guidelines to applications by the following means:

> Initially, Graham [Rogers] could have insisted that its retailers send an application for insurance to it for review and approval before submitting the application to GeoVera. Moreover, the Agreement makes clear that, after a retailer completes an insurance application, the System would provide a quote response to Graham and the retailer. This, in addition to the daily reports produced by the System and sent directly to Graham, would have put Graham on notice that one of its retailers was in the process of submitting an application. Graham then could have worked with its retailer to verify that the risk to be insured fell within GeoVera's underwriting criteria before the policy was issued. *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 450 (8th Cir. 2011).

It is undisputed that Graham Rogers took no action to verify that the Balentines' residence fell within GeoVera's underwriting criteria. Based on the undisputed record, the Court finds, as a matter of law, that Graham Rogers breached its duty to apply GeoVera's underwriting guidelines to the Balentines' February 2006 application. Accordingly, GeoVera is entitled to damages which would place it in the same position as if the contract had not been breached, which may fairly and reasonably be considered as arising naturally from the breach. *See Dawson v. Temps Plus, Inc.* , 337 Ark. 247, 258, 987 S.W.2d 722, 728 (1999).

GeoVera seeks $785,708.34 in damages, the amount it paid the Balentines for damages covered under their homeowners' policy. In support of its claim, GeoVera presents the affidavit

testimony of Darrell A. Gray, vice president of GeoVera, who works in the company's underwriting and analytics department. Docket entry #168. Ex. E. Gray testifies that based on his experience and employment with GeoVera, "had the insurance application of Gary and Sherry Balentine properly disclosed the bankruptcy of the Balentines, or properly stated the acreage of the Balentines' land, Geovera would have denied the policy . . . . " *Id*. at 1. Gray further testifies that pursuant to the Agreement between Graham Rogers and GeoVera, GeoVera relied on Graham Rogers and Reeves to properly disclose information about the Balentines. *Id*. at 1-2. GeoVera also cites a portion of Reeves's deposition testimony, in which he acknowledges that if the Balentines' application had contained accurate information regarding bankruptcy and acreage, the application would have been rejected. *See* Reeves Dep. at 29.

Graham Rogers presents no evidence that the erroneous information contained in the Balentines' application was immaterial to GeoVera's decision whether to issue the policy. Nor does Graham Rogers argue that the damages sought did not arise from the breach or that GeoVera failed to mitigate damages.

Based on the undisputed evidence, the Court finds that GeoVera would not have issued the Balentines' policy if Graham Rogers had fulfilled its contractual duty to apply GeoVera's underwriting guidelines. The Court further finds that as a direct consequence of Graham Rogers' breach, GeoVera suffered damages in the amount of $785,708.34. However, before the Court enters final judgment with respect to GeoVera's breach of contract claim, the Court will give the parties an opportunity to brief the Court on whether Graham Rogers is entitled to offset the amount of GeoVera's settlement with Reeves and ECA. Additionally, unless the parties

request otherwise, the Court will enter a final scheduling order with respect to Graham Rogers' cross-claims against Reeves and ECA and Graham Rogers' third-party complaint against GeoVera Specialty.

IT IS THEREFORE ORDERED that:

1. Defendants' motion for summary judgment (docket entry #165) is DENIED.

2. Plaintiff's motion for summary judgment (docket entry #168) is GRANTED.

3. The parties are directed to file briefs, within twenty (20) days of the entry date of this order, on the issue of whether Graham Rogers is entitled to offset.

4. Unless the parties request otherwise, the Court will enter a final scheduling order with respect to the remaining claims in this case: Graham Rogers' cross claims against Jerry Reeves and East Central Arkansas Insurance, Inc. and Graham Rogers' third party complaint against GeoVera Specialty Insurance Services, Inc.

IT IS SO ORDERED THIS 30th DAY OF JANUARY, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE