**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | |
|---|---|
| GeoVera SPECIALTY INSURANCE COMPANY * * * *  Plaintiff * * VS. * * * GRAHAM ROGERS, ET AL. * * * Defendants * | NO: 4:08CV00163   SWW |

## ORDER

Plaintiff GeoVera Specialty Insurance Company ("GeoVera") commenced this action pursuant to the Court's diversity jurisdiction against Graham Rogers, Inc. ("Graham"), East Central Arkansas Insurance, Inc. ("ECA"), and Jerry Reeves ("Reeves").   Along with its answer, Graham filed cross-claims against Reeves and ECA, seeking contribution.[1] Additionally, Graham filed a third-party complaint against GeoVera Specialty Insurance Services, Inc. ("GeoVera Services") for contribution and indemnity.  Remaining for resolution are Graham's cross-claims against Reeves and ECA and third party claim against GeoVera Services.  The case is before the Court on GeoVera Services' motion for summary judgment (docket entries #201, #202, #203), Graham's  response in opposition (docket entries #204, #205, #206), and GeoVera Services' reply (docket entry #207).   Also before the Court is Graham's motion for clarification

---

[1] Regarding its cross-claims against ECA and Reeves, Graham claims a right to indemnity under an implied contract theory. *See* docket entry #156, at 5.

of the scheduling order and for leave to conduct discovery (docket entry #208), GeoVera Services' response in opposition (docket entry #209 ), and Graham's reply (docket entry #210). After careful consideration, and for reasons that follow, GeoVera Services' motion for summary judgment is granted, and Graham's motion for clarification and discovery is denied as moot. Graham is directed to file a status report regarding the status of its cross-claims against ECA and Reeves.

## I.  Background

GeoVera, formerly known as USF&G Specialty Insurance Company, and Graham, a wholesale insurance broker, entered a Surplus Lines Broker Agreement ("Surplus Lines Agreement" or "Agreement"), effective June 1, 2003.  It is the law of this case that the Surplus Lines Agreement "unequivocally place[d] a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement." *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 449 (8th Cir. 2011).  The Agreement "require[d] that Graham apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by Graham's network of retailers, and deliver policies only when the risk falls within the acceptable underwriting criteria." *Id*.

The Surplus Lines Agreement also obligated Graham to appoint retail agents to market GeoVera insurance policies.  *See* docket entry #57, Ex. A.  Pursuant to the Agreement,  Graham and its retail agents had access to GeoVera's Residential Homeowner Quoting and Homeowner Insurance Processing System ("the System") "for purposes of sending quote requests, receiving quotes, and printing and delivering quotes, applications, and binders." *Id*.  The Agreement stated

that Graham "and/or" retail agents would complete an electronic policy application and that the System would then provide a quote response to Graham and the retail agent and that Graham would receive daily pre-formatted reports from the System. *Id*.

The same day the that GeoVera and Graham entered the Agreement, Graham entered a Service Agreement ("Service Agreement") with GeoVera Services, formerly known as F&G Specialty Insurance Services, Inc. *See* docket entry #57, Ex. F. GeoVera Services is the service center for GeoVera, and both entities are subsidiaries of Geovera Holdings, Inc. *See* docket entry #167, ¶ 4 and docket entry #176, ¶ 4.

In 2003, Graham entered into a retail producer agreement with Reeves. In 2004, Reeves submitted a homeowners' insurance application for Gary and Sherry Balentine. Reeves submitted the Balentines' policy through the System, and GeoVera accepted the application and issued the policy. However, in early 2006, GeoVera cancelled the Balentines' policy for failure to make a premium payment. Reeves contacted GeoVera Services on behalf of the Balentines, and requested that the policy be reinstated. *See* Reeves Dep. at 13-14. In deposition, Reeves testified that in response to his request, a person named "Thea" from GeoVera Services called his office and informed him that GeoVera would "rewrite" the policy. According to Reeves, "Thea" instructed him to rewrite the Balentines' application "as it was."[2]

---

[2]Pertinent portions of Reeves's deposition transcript reads as follows:

Q: [by counsel for Graham] Okay. So in the latter part of January 2006 a person named Thea in a phone call to your office says . . . that USF&G is not going to renew this policy.
A: They won't - - they wanted - - no, not that they wouldn't renew it. They would rewrite it.

In February 2006, Reeves copied the Balentines' original insurance application and submitted it to GeoVera via the System. Reeves acknowledges that he did not communicate with the Balentines to confirm the accuracy of information contained on the application, nor did he obtain the Balentines' signatures on the application before or soon after he submitted it to GeoVera. *See* Reeves Dep. at 18-19.

In September 2006, fire destroyed the Balentines' home, and they filed an insurance claim under their GeoVera homeowners' policy. During GeoVera's claim investigation, it discovered that the Balentines would not have qualified for coverage under the company's underwriting guidelines if the application had contained accurate information. GeoVera's written underwriting guidelines, which were in place during the relevant time period, provided that insurance applications would be completed on-line and printed in the agent's office for the applicants' signatures. *See* docket entry #59, Exhibit Filed Under Seal. It is undisputed that the Balentines did not sign the application. GeoVera's guidelines also provided that "the risk must fit" criteria including that the home to be insured be located on no more than five acres and

---

| | |
|---|---|
| Q: | What does that mean? |
| A: | They wouldn't accept that - - the check that they had. |
| Q: | Okay. |
| A: | Because it was six days late. |
| Q: | All right. So what had to happen? What were they saying? |
| A: | I was told to simply rewrite it as it was. And that's - - that's the wording that I got. Go ahead and rewrite it as it was. |

Reeves Dep. at 15-16.

| | |
|---|---|
| Q: | [by counsel for Graham] So in this particular situation, the Balentine case, I understood that you were told to rewrite the application as it was. |
| A: | Yes, sir. |

Reeves Dep. at 37.

4

that there had been no foreclosures, repossessions, or bankruptcies within the past five years. *See id*. It is undisputed that the Balentines' 2006 application declared that the subject residence was located on less than five acres, but it was actually located on six acres. The application also stated that the Balentines had not filed for bankruptcy within the past five years, but they had filed a bankruptcy petition in 2005.

After determining that the application's deficiencies could not be attributed to the Balentines, GeoVera paid them $785,708.34 for damages covered under the policy. Then, on February 22, 2008, GeoVera commenced this action, asserting, among other things, claims for negligence and breach of contract against Graham. In support of its contract claim, GeoVera charged that Graham "breached its contractual obligations, duties and responsibilities under the . . . Agreement . . . directly and through its agents' negligent conduct in failing to reasonably and adequately apply the written underwriting and rating guidelines prepared by [GeoVera]." Docket entry #65, ¶ 29.

By order entered August 7, 2009, the Court entered summary judgment in Graham's favor, finding that Graham had no role or duty with respect to submitting the Balentines' application. On appeal, the Eighth Circuit affirmed the grant of summary judgment on GeoVera's negligence claim but reversed on the breach of contract claim, finding "that the Agreement places a duty on Graham to apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those submitted by retailers appointed by Graham. *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 449 (8th Cir. 2011). The Court of Appeals concluded that "while retailers may help or assist Graham in applying the underwriting guidelines, Graham retained the ultimate duty

5

to apply GeoVera's underwriting guidelines so that the risk to be insured fell within the acceptable underwriting guidelines.'" *Id*. at 449-450.

After remand, the Court granted summary judgment in GeoVera's favor. The case is now before the Court on GeoVera Services' motion for summary judgment as to Graham's third-party complaint for indemnification. Also before the Court is Graham's related motion for clarification and discovery.

## II.  Graham's Motion for Summary Judgment[3]

In its third-party complaint against GeoVera Services, Graham seeks indemnity based on the Service Agreement.  In support of its motion for summary judgment, GeoVera Services asserts that the uncontroverted evidence precludes Graham's claim.  GeoVera contends that Graham's claim is based solely on Reeves's testimony that a GeoVera Services' employee named "Thea" instructed him to rewrite the Balentines' application "as it was."[4]

---

[3]Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

[4]Previously, Graham moved for summary judgment as to its breach of contract claim against GeoVera and presented Reeves's testimony as evidence that GeoVera had waived any

Graham asserts that the Service Agreement alone "is a sufficient item to present a factual question to the jury." Docket entry #205 at 2. According to Graham, "what [the agreement] means and to what extent it impacts how Reeves handled the Balentine transaction is a question that can only be resolved by the jury after considering all the evidence. There is nothing in the rulings to date in this case that resolves [or] moots that issue." Docket entry #205, at 3.

The meaning of an unambiguous contract presents a question of law appropriate for summary judgment, but the interpretation of an ambiguous contract term presents a question of fact, thereby precluding summary judgment. *See McCormack v. Citibank, N.A.,* 100 F.3d 532, 538 (8th Cir. 1996)(citation omitted); *see also Pickens–Bond Const. Co. v. NLR Electric Co.*, 249 Ark. 389, 392, 459 S.W.2d 549, 552 (1970)(noting that a contract of indemnity is to be construed in accordance with the rules for the construction of contract generally). A court must construe a contract in accordance with the plain meaning of the language employed, and if there is no ambiguity in the language of the contract, then there is no need to resort to rules of construction. *See Pickens-Bond*, 249 Ark. at 393, 459 S.W.2d at 552.

Under the heading "Services to be Provided," the Service Agreement states:

---

right it may have against Graham and that Graham's obligations to GeoVera were assumed by GeoVera Services. *See* docket entry #166, at 8. Regarding Graham's waiver argument, the Court found that Reeves's vague testimony regarding a phone call he received from a person named Thea, who apparently worked for GeoVera Services, failed provide evidence that GeoVera had waived its right to have Graham apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Surplus Lines Agreement. As for the argument that GeoVera Services assumed Graham's duty to apply the underwriting guidelines, the Court found no evidence that GeoVera intended or agreed that GeoVera Services would assume Graham's obligations under the Agreement. The Court further found that the Service Agreement did not relieve Graham of its contractual obligation to GeoVera. *See* Restatement (Second) of Contracts § 318 (1981)("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.").

> [GeoVera Services] shall issue and mail all policies, binders, endorsements, renewals, notices of cancellation or nonrenewal, and any other policy holder notices, complying with any and all statutory and regulatory requirements related to the policyholders; (ii) perform premium and accounting functions on behalf of [Graham], as more fully described in Article II of this Agreement; (iii) respond to all questions from retail producers concerning policy issuance, premium and underwriting guidelines; and (iv) maintain a retail producer database.

Docket entry #57, Ex. F. Article II of the Agreement further describes GeoVera Services' responsibilities regarding premium and accounting functions and provides that GeoVera Services will prepare and mail premium bills and notices, receive premium payments and wire the same to Graham's bank account, pay retail producers commissions, and keep current records of all transactions and correspondence. *See id*.

> Under the heading "Indemnification," the Service Agreement provides:
>
> [GeoVera Services] will defend, indemnify and hold [Graham] harmless from and against any and all claims, suits, actions, liabilities, losses, expenses or damage now existing or which may arise which the BROKER may incur directly or indirectly as a result of:
>
> 1. Any loss caused *solely* by the errors of [GeoVera Services] in performing services under this Agreement; or
>
> 2. Any loss cause solely by the improper act or omissions of [GeoVera Services] in the payment of commissions or return of premiums on behalf of [Graham].

*Id.* (emphasis added).

Graham contends that "each of the relevant obligations that the Eighth Circuit found to be imposed on Graham by the Surplus Lines Broker Agreement was assumed by [GeoVera] Services pursuant to the Service Agreement." Docket entry #205. The Eighth Circuit held that the Surplus Lines Broker Agreement "requires that Graham apply GeoVera's underwriting guidelines to all applications for insurance submitted under the terms of the Agreement, including those applications submitted by Graham's network of retailers, and deliver policies

8

only when the risk falls within the acceptable underwriting criteria."[5] *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 449 (8th Cir. 2011). The Service Agreement, however, is void of any language imposing the same duties upon GeoVera Services. The Service Agreement provides that GeoVera Services shall respond to all questions from retail producers concerning policy issuance and underwriting guidelines, but it does not charge GeoVera Services the tasks of supervising retail producers and ensuring the accuracy of information contained on policy applications submitted by retail producers.

In an effort to show that the Service Agreement relieved Graham of its duty to apply GeoVera's underwriting guidelines to all applications submitted under the Surplus Lines Agreement, Graham cites the deposition testimony of the company's CEO, Jerry Lesch. Lesch testified that it was his understanding that the Service Agreement--specifically, GeoVera Services' duty to respond to questions from retail producers--"takes away" Graham's responsibility to apply underwriting rules and rating guideline to applications submitted by retail producers. *See* docket entry #57, at 15-16. When asked to explain how the Service Agreement "takes away" Graham's duty to apply GeoVera's underwriting guidelines, Lesch responded: "Well, that's why we're paying them two percent. That makes it so that all's we do is market." *Id.,* at 16.

The Court finds that Lesch's conclusory testimony fails to create an issue for trial. The Service Agreement lists GeoVera Services' duties in clear and unambiguous language, and the

---

[5]The Court of Appeals noted that Graham could have insisted that its retailers send an application for insurance to it for review and approval before submitting the application to GeoVera and could have worked with its retailers to verify that the risk to be insured fell within GeoVera's underwriting criteria before the policy was issued. *GeoVera Specialty Ins. Co. v. Graham Rogers, Inc*. 636 F.3d 445, 450 (8th Cir. 2011).

duties listed do not include an obligation to ensure that retail producers apply GeoVera's underwriting guidelines. The Court finds no issues for trial regarding the meaning of the Service Agreement.

The indemnity clause included in the Service Agreement provides that GeoVera Services will indemnify Graham for losses caused solely by errors of GeoVera Services in performing under the Agreement. At best, Reeves's testimony establishes that a GeoVera Services' employee named Thea informed him that GeoVera would not renew the Balentines' cancelled policy, and she instructed him to rewrite and submit the Balentines' policy application. Although Reeves testifies that Thea told him to rewrite the application "as it was," he does not claim that Thea knew that the application would contain false information. The record is void of any evidence that the loss in this case was caused by errors committed by GeoVera Specialty in performing services under the Service Agreement. Furthermore, GeoVera Services has come forward with evidence that it has never employed a person named "Thea." Docket entry #201, Ex. A (Bosman Aff.). The Court finds no issues for trial regarding Graham's indemnity claim against GeoVera Services. Accordingly, GeoVera Services is entitled to summary judgment on the third-party complaint.

### III. Graham's Motion for Clarification

After the Eighth Circuit's remand, the Court entered a final scheduling order, setting this case for a trial and imposing a discovery deadline. Subsequently, the parties filed cross motions for summary judgment as to GeoVera's breach of contract claim and a joint motion to continue the trial date. In the motion to continue, the parties stated that Graham had noticed depositions for representatives of GeoVera and GeoVera Specialties, but the parties wanted to delay those

depositions until after the Court ruled on the cross motions for summary judgment. *See* docket entry #179. After the Court granted summary judgment in GeoVera's favor, and ruled on Graham's motion for reconsideration, the Court entered an amended scheduling order setting the remaining claims for trial to begin January 22, 2013. Through unintended oversight, the Court failed to include a new discovery deadline in the amended scheduling order.

Along with its response in opposition to GeoVera Services' motion for summary judgment, Graham filed a motion for clarification of the scheduling order and for leave to conduct discovery "on [GeoVera Services]". Docket entry #208. Graham asserts that its third-party claim against GeoVera Services did not ripen until the Court granted summary judgment in GeoVera's favor and that "questions of fact abound . . . making the reopening of discovery essential and the consideration of judgment as a matter of law inappropriate." Docket entry #208, ¶ 6.

Under Rule 56 of the Federal Rules of Civil Procedure, a party may move for summary judgment at any time, and a trial court is not required to allow discovery before entering summary judgment. *See* Fed. R. Civ. P. 56(b); *see also United States v. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Graham states that it is not requesting that the Court delay a ruling on the pending motion for summary judgment[6] but merely seeks additional discovery to allow it to

---

[6] A party faced with a motion for summary judgment before it has conducted discovery may, under Rule 56(d), request that the court postpone a ruling on the motion. Under Rule 56(d), formerly Rule 56(f), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may . . . defer considering the motion or deny it; . . . or issue any other appropriate order." Fed. Rule Civ. P. 56(d).

Rule 56(d), however, "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is

develop its claim for trial. For reasons previously explained, the Court finds that Graham has failed to come forward with specific facts showing a genuine issue for trial as to the third-party claim against GeoVera Specialty. Accordingly, the Court finds that Graham's request for clarification and for leave to conduct discovery is moot.

**IV.**

IT IS THEREFORE ORDERED that Third-Party Defendant GeoVera Specialty Insurance Services, Inc.'s motion for summary judgment (docket entry #201) is GRANTED.

IT IS FURTHER ORDERED that Defendant Graham Rogers, Inc.'s motion for clarification and discovery (docket entry #208) is DENIED AS MOOT.

IT IS FURTHER ORDERED THAT Defendant Graham Rogers, Inc. Is directed to file a status report within ten (10) days from the entry date of this order stating the status of its cross-claims against East Central Arkansas Insurance, Inc. and Jerry Reeves.

IT IS SO ORDERED THIS 6TH DAY OF SEPTEMBER, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

meritorious." *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir. 1997); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)("Rule 56(f) does not condone a fishing expedition."). A nonmovant seeking relief under Rule 56(d) must do more than speculate that it may discover additional facts that would overcome a motion for summary judgment, *see Stanback v. Best Diversified Prods.*, 180 F.3d 903, 911 (8th Cir.1999), and must submit an affidavit showing showing "'what specific facts further discovery might unveil.'" *Id*. (quoting *Dulany v Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997))